[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16184
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00451-WBH

RENARDO HUDSON,

Plaintiff-Appellee,

versus

CITY OF ATLANTA, GEORGIA,

Defendant,

KEVIN KNAPP,
individually and in his official capacity as an employee of
the City of Atlanta Police Department,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 13, 2017)

Before MARTIN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Renardo Hudson brought suit against City of Atlanta Police Officer Kevin

Knapp pursuant to 42 U.S.C. § 1983.  He claims his constitutional rights were

violated after he was unlawfully arrested based on intentionally fabricated probable

cause.  Hudson also brought Georgia state law claims against Knapp.  Knapp

moved for summary judgment, arguing he is entitled to qualified immunity for the

federal claims and official immunity for the state law claims.  The district court

denied Knapp's motion.  After careful review of the record, we affirm.

I.

We review de novo the district court's disposition of a summary judgment

motion based on qualified immunity.  Lee v. Ferraro, 284 F.3d 1188, 1190 (11th

Cir. 2002).  Whether Knapp is entitled to qualified immunity is a legal question.

Id.  "[O]ur analysis must begin with a description of the facts in the light most

favorable to the plaintiff."  Id.

On the afternoon of February 20, 2013, Hudson was lawfully parked on the

side of a street in Atlanta, Georgia, sitting in his car.  Knapp saw Hudson sitting in

the car, and ran the license plate number.  Knapp says he suspected the car was

stolen.  He claims the registered owner of the car had an active warrant for arrest in

the name of "Charles Gray."  Knapp says the warrant listed Hudson's full name as

2

an alias for Charles Gray.  Hudson, in fact, is not Charles Gray.  He does have a close relationship with Charles Gray though, and considers him a brother.

Knapp initiated a traffic stop and Hudson gave Knapp his license and registration.  In his report, Knapp said he cross-checked the warrant against Hudson's driver's license, and found the name, date of birth, social security number, height, and weight all matched.  He also said he compared photos of Hudson and Gray, and then confirmed the warrant's validity.

However, Hudson submitted a variety of exhibits to the court that contradict Knapp's claims.  Hudson gave a copy of his driver's license to the court.  It has his name on it—Renardo Hudson, not Charles Gray—and does not have a social security number printed on it at all.  And Hudson managed to get a copy of the "active" warrant against Charles Gray, which he also submitted to the court.  The name, date of birth, height, and weight listed on the warrant did not match Hudson's driver's license.  Along with it, Hudson provided documentation showing the warrant for Gray had been administratively closed since 2011 because Gray was incarcerated.  Hudson also provided the court with a copy of his vehicle's registration.  It listed his name, Renardo Hudson (not Charles Gray), as the vehicle's registered owner in the state of Georgia.  Hudson also says he does not resemble Charles Gray, who is heavier and has much darker skin.

Knapp arrested Hudson, and told him there was a warrant for his arrest as Charles Gray. Hudson told Knapp he was not Gray and that Gray was serving a federal prison sentence in Tennessee or Kentucky. Knapp replied: "I don't care whether you are or not, I'm locking you up." Knapp did not take Hudson's fingerprints or call to check if Gray was, in fact, incarcerated. Knapp tightly handcuffed Hudson—so much so that he says it caused breathing problems as well as wrist, shoulder, arm, and back pain for which he later needed treatment. Knapp placed Hudson in the back of his car for over an hour, never checking the cuffs.

Knapp took Hudson to the Fulton County Jail. Hudson was held there for two days before two DeKalb County deputies arrived and said it was clear that Hudson was, in fact, not Gray. Hudson was released eight hours later without being charged.

Hudson filed a complaint with the City of Atlanta Police Department, but the complaint was closed. He then sent the City of Atlanta an ante litem notice, as required under O.C.G.A. § 36-33-5, informing the city he intended to bring this action. Hudson filed this action, alleging his rights under the Fourth, Eighth, and Fourteenth Amendments were violated by his unlawful arrest and seizure, as well as the use of excessive force. He also brought several state law claims. Knapp moved for summary judgment, arguing he is entitled to qualified immunity for the

4

federal claims and official immunity for the state law claims.  The district court

denied Knapp's motion and this appeal followed.

## II.

We conduct a two-step inquiry to decide whether qualified immunity should

be granted: (1) "taken in the light most favorable to the party asserting the injury,

do the facts alleged show the officer's conduct violated a constitutional right;" and

(2) "[i]f a constitutional right would have been violated under the plaintiff's

version of the facts, [we] must then determine whether the right was clearly

established."  Lee v. Ferraro, 284 F.3d at 1194 (quotation omitted and alteration

adopted).  Because it is undisputed that Knapp was acting within the scope of his

discretionary authority, the burden is on Hudson to show that qualified immunity is

not appropriate.  Id.

## A.

Hudson argues Knapp violated his Fourth Amendment rights by falsely

arresting him and then using excessive force in the course of the illegal arrest.

Because Hudson argues the excessive force was a result of an illegal arrest, this

claim is "subsumed in the illegal [] arrest claim and is not a discrete excessive

force claim."  Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000).  Hudson

says Knapp intentionally fabricated probable cause to unlawfully arrest him.

In order to be entitled to qualified immunity on a false arrest claim, Knapp must have had "arguable probable cause" to arrest Hudson. Lee, 284 F.3d at 1195. "Whether an officer possesses . . . arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010). "Showing arguable probable cause does not [] require proving every element of a crime." Id. The relevant inquiry is whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed probable cause existed to arrest Plaintiff." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (quotation omitted). We evaluate whether an office had arguable probable cause based on "the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Wilkerson v. Seymour, 736 F.3d 974, 978 (11th Cir. 2013) (quotation omitted).

Knapp does not allege he ever witnessed Hudson commit a crime. Instead, he says he reasonably believed Hudson was Gray, and that DeKalb County had an active, outstanding warrant for Gray's arrest. If Knapp is to be believed, then he acted on a "reasonable mistake" and did not violate Hudson's constitutional rights. See Rodriguez v. Farrell, 280 F.3d 1341, 1345–46 (11th Cir. 2002). But for

6

qualified immunity, we must determine whether Hudson's rights were violated under Hudson's version of the facts. Lee, 284 F.3d at 1190.

Based on Hudson's version of events, we conclude his constitutional rights were violated. Hudson says he was simply sitting in his own car, parked on the side of the road, when Knapp approached him. Then, he says Knapp lied about his vehicle being registered to Gray; lied about his driver's license matching the information for Gray's arrest warrant (and that warrant being active); lied about him being listed as an alias for Gray; and lied about him looking like Gray. Knapp then arrested him on this basis. And when Hudson told Knapp he wasn't Gray, Knapp replied "I don't care whether you are or not, I'm locking you up." According to Hudson's version of the facts, therefore, Knapp intentionally lied about Hudson matching an arrest warrant for someone else. That is undoubtedly a constitutional violation. See U.S. Const. amend. IV; see also Kingsland, 382 F.3d at 1233 ("If the defendants fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause, as alleged, reasonable officers in the same circumstances and possessing the same knowledge as the defendants could not have believed that probable cause existed to arrest the plaintiff.").

Knapp argues the district court ignored his version of events, and "impos[ed] on him the extraordinary, and unprecedented, obligation to also introduce

7

documentary evidence" supporting his claims. But under this Court's precedent, "[w]e do not weigh conflicting evidence or make credibility determinations; the [plaintiff's] evidence is to be accepted for purposes of summary judgment." Wate v. Kubler, 839 F.3d 1012, 1018 (11th Cir. 2016). Hudson's version of events not only conflicts with Knapp's, but is also thoroughly supported by objective, documentary evidence that Hudson provided to the district court. This Court "cannot allow a probable cause determination to stand principally on the unsupported statements of interested officers, when those statements have been challenged and countered by objective evidence." Kingsland, 382 F.3d at 1228. Thus, we proceed to whether the constitutional violation was clearly established.

## B.

We determine whether the constitutional right was "clearly established" under "the plaintiff's version of the facts." Lee, 284 F.3d at 1194. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997). This inquiry is limited to the law at the time of the incident, as "an official could not reasonably be expected to anticipate subsequent legal developments." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

Under Hudson's version of the facts, Knapp intentionally falsified the facts necessary to establish probable cause. This Court has long held "falsifying facts to establish probable cause is patently unconstitutional." See Kingsland, 382 F.3d at 1232 (pointing to cases decided in 1997 and 1989). Therefore, this constitutional right was clearly established under Hudson's version of the facts. Knapp is not entitled to qualified immunity.

### III.

Knapp also appeals the district court's denial of his official immunity for Hudson's state law claims.[1] Hudson brought state law claims against Knapp for false imprisonment/excessive detention and intentional infliction of emotional distress. Under Georgia law, police officers are entitled to official immunity from state law claims in their personal capacity under certain circumstances. Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001); see Ga. Const. art. I, § 2, para. IX(d). Under this immunity, Knapp is liable only for (1) "ministerial acts negligently performed"; or (2) discretionary "acts performed with malice or an intent to injure." Cameron, 549 S.E.2d at 344; see Ga. Const. art. I, § 2, para. IX(d).

There is no dispute that Knapp's conduct constituted a discretionary act under Georgia law. Therefore, the relevant inquiry is whether Knapp acted with

---

[1] Knapp says Hudson abandoned the state law claims by failing to address them in the response to Knapp's motion for summary judgment. However, the record shows Hudson did, in fact, respond to Knapp's assertions about the state law claims.

9

malice or an intent to injure.  See Cameron, 549 S.E.2d at 344; Bailey v. Wheeler, 843 F.3d 473, 485 (11th Cir. 2016).  Hudson argues Knapp acted with actual malice by intentionally fabricating probable cause—an intentionally wrongful act. Knapp argues the facts show he "did everything in his power to protect [Hudson's] rights" and that Hudson "would be hard pressed to make such a showing."

For Georgia's official immunity, "'actual malice'requires a deliberate intention to do wrong." Merrow v. Hawkins, 467 S.E.2d 336, 337 (Ga. 1996).  It requires not only "ill will," but also "the intent to do something wrongful or illegal." Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999).  To avoid summary judgment, Hudson must "allege the actual malice necessary to overcome official immunity for discretionary acts." Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007); see also Reed v. DeKalb Cty., 589 S.E.2d 584, 588 (Ga. Ct. App. 2003) ("To avoid summary judgment, [the plaintiff] had to offer some evidence that [defendants] acted with actual malice or deliberate intent to injure her.").

We have already explained Hudson's allegations that Knapp intentionally fabricated probable cause to arrest him.  Hudson says Knapp lied about a number of things to arrest him on a baseless charge.  And he has provided thorough documentation to support his allegations.  This meets the requirements of Georgia law to show a deliberate intention to do wrong, or actual malice.  We therefore

affirm the district court's denial of official immunity to Knapp on the state law claims.

## IV.

"Qualified immunity is, as the term implies, qualified.  It is not absolute." Kingsland, 382 F.3d at 1233.  Based on the facts as Hudson relates them, a constitutional violation surely happened.  Based on Knapp's story, it was a reasonable mistake.  However, at summary judgment, it is not our role to decide which way tough facts point.  Instead, we must accept the plaintiff's version of events, and determine whether genuine material questions of fact exist that are best suited for a trial.  Our careful review of the record shows us they do.

**AFFIRMED.**